**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JUDICIAL WATCH, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:25-1056 (LLA) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFF'S STATUS REPORT**

Plaintiff Judicial Watch, Inc., through undersigned counsel, respectfully submits this status report in accordance with the Court's May 6, 2026, Minute Order.

Underlying this suit are Plaintiff's four FOIA requests submitted to Defendant in February 2025.  Two requests, aimed at DOJ and FBI, sought records related to Jeffrey Epstein.  The remaining two requests are the subject of this report.  They seek:

1) "All records of communication between Director Patel and any other individual or entity regarding any lists or other records depicting the identities of clients or associates of Jeffrey Epstein.  This request includes, but is not limited to, all records related to the Department's compilation, distribution, handling, and the potential public release of any such record or the information contained therein" ("Patel Request") and

2) "All records of communication between Attorney General Pam Bondi and any other individual or entity regarding any lists or other records depicting the identities of clients or associates of Jeffrey Epstein.  This request includes, but is not limited to, all records related to the Department's compilation, distribution, handling, and the potential public release of any such record or the information contained therein." ("Bondi Request").  *See* Complaint, ECF No. 1.

Defendant's searches yielded no records.

In the Parties' March 31, 2026, Joint Status Report, Plaintiff requested a search declaration for the Patel Request and Bondi Request to provide key missing information for

Plaintiff to understand the Defendant's search methodology, and to meaningfully confer with Defendant about potentially refining its searches.  ECF No. 15.

On April 13, 2026, the Court ordered Defendant to advise the Court "why ordering such declarations would not be appropriate at this time."  Minute Order, April 13, 2026.

Defendant filed its status report on April 27, 2026.  *See* Defendant's Report, ECF No. 16. Defendant argues only that it already provided sufficient information about the searches, and any additional detail would be superfluous.

On the contrary, substantial information is needed to assess Defendant's searches.

Taking some examples from the Patel Request first, the FBI's search description does not state whether it searched both Director Patel's inbox *and* his outbox.  The Patel Request included communications *to* and *from* Director Patel.  This distinction is significant because Director Patel was the recipient of a formal letter regarding Epstein's associates and the public release of the Epstein files from AG Bondi, during the search window.  *See* AG Pam Bondi's Letter to Director Patel ("AG Bondi's Letter"), February 27, 2025, ECF 15-1.  This letter is responsive on its face. Yet when Plaintiff queried FBI as to why the letter was not located in the search, FBI responded, "The request very specifically sought Director Patel's communications, so we only searched his communications."  *See* Emails, ECF No. 16-1.  This answer indicates FBI would not have considered this letter received by Patel as one of "Director Patel's communications."  This leads Plaintiff to the conclusion that FBI conducted a narrower search than would be adequate to locate records under Plaintiff's request, if communications received were not located.

This letter from AG Bondi contains numerous references to communications, past and to come, with the FBI and with Director Patel, himself.  *See* AG Bondi's Letter.  At minimum, all past communications referenced are responsive to Plaintiff's request, and none were found.  AG

Bondi refers to a communication she and Director Patel had the day before, not found in FBI's search of Director Patel's communications. *Id*. AG Bondi ordered Director Patel to orchestrate the delivery of all the Epstein files to her office by February 28, which delivery would have been a response transmitted to her office from FBI and responsive to the Patel Request. *Id*. Finally, AG Bondi ordered Director Patel to conduct an immediate investigation into why her order to the FBI to hand over the Epstein files was not followed. *Id*. All communications, directives, and follow-up conducted by Director Patel in this investigation are responsive to Plaintiff's Patel Request, within the time limit. If FBI's search of Director Patel's emails and messages discovered not one record of follow-up, Plaintiff wonders which other channel of communication Director Patel directed this investigation through and why it was not searched.

If Director Patel communicated through a deputy, secretary, or assistant, those communications are responsive to Patel's Request. Given that the FBI claims it located no communication from Director Patel's email, it would be reasonable to consider that his communication found different channels, not searched. There is no indication from the current search description that Defendant attempted to search a deputy or secretary's records to find Director Patel's communications.

There have also been search term discrepancies. In the Parties' most recent joint status report, Defendant provided an incomplete list of search terms for the Patel Request, including "Epstein" + "List," but not including simply the name "Epstein." *See* Joint Status Report, March 31, 2026, ECF No. 15. When Plaintiff suggested searching "Epstein," the FBI initially claimed its terms were sufficient, then later disclosed that they actually had searched just "Epstein" back in August 2025. *See* Emails, ECF No. 16-1, Page 3. Plaintiff is asking for a complete list of search terms used across the one-year span of time during which the FBI's search was ongoing.

As for AG Bondi's Request, many of the remaining issues stem from the batches of communications she references having sent and received leading up to the February 27th letter. Defendant's position is that there are no records of these AG Bondi communications:

1. "I requested the full and complete files related to Jeffrey Epstein,"
2. "In response to this request, I received approximately 200 pages of documents…"
3. "I learned from a source that the FBI Field Office in New York was in possession of thousands of pages…"
4. "When you and I spoke yesterday…"
5. "I *repeatedly questioned* whether this was the full set of documents responsive to my request and *was repeatedly assured* by the FBI that we had received the full set of documents." ECF 15-1 (emphasis added).

Plaintiff's request sought these records in particular, as all of them would have been transmitted to, from, or on behalf of AG Bondi, all ahead of her February 27 letter. If AG Bondi was communicating through a deputy, assistant, or secretary, these still constitute communications of AG Bondi. Again, the search description does not include follow up searches of alternative communication channels.

Defendant limited the range of its search for AG Bondi's records to end on February 26, 2025, and Director Patel's records to end on March 17, 2025, the same day components sent acknowledgment letters to Plaintiff. Plaintiff allows that it is possible components developed their search strategies and initiated searches at lightening speed compared to the norm, but this would be highly unusual. If Director Patel's search was initiated immediately, it is difficult to fathom how it took FBI over a year, from March 17, 2025 to March 31, 2026, to update Plaintiff on the search and give its "no records" response.

Ultimately, the DOJ bears the burden of demonstrating the adequacy of its searches. This is especially relevant where the Defendant claims no responsive records exist. The presumption of good faith is typically earned through DOJ providing concrete search details, and this

- 5 -

presumption is somewhat damaged when Plaintiff finds a responsive record that was missed in two separate components' searches, and when that record indicates a wealth of additional responsive records not found.

Detailed search declarations are essential for the Parties to narrow potential unnecessary disputes that would otherwise arise during summary judgment briefing.  In the interest of judicial economy, Plaintiff sees no good reason to postpone the declarations when issues that may arise therefrom could be resolved prior to burdening the Court and the Parties with summary judgment briefing.  In a separate FOIA case for Epstein-related records, FBI offered to draft a search declaration "in an effort to resolve their dispute regarding the scope of the search without court intervention." *Judicial Watch v. U.S. Dep't of Justice*, No. 25-2191 (LLA) (filed May 13, 2026), ECF No. 14.  Plaintiff is requesting the same here.

Plaintiff respectfully requests the Court require search declarations for the Patel and Bondi Requests to identify and resolve any disputes over scope or adequacy of the search before summary judgment briefing.

Dated:  May 15, 2026

Respectfully submitted,

*/s/ Philumina Johanni*
PAUL J. ORFANEDES
DC Bar No. 429716
PHILUMINA JOHANNI*
Judicial Watch, Inc.
425 Third Street SW, Suite 800
Washington, DC 20024
Phone: (202) 646-5172
Email: porfanedes@judicialwatch.org

*Counsel for Plaintiff*
*\*Pro Hac Vice Counsel*